## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| MAVERICK PETTIT | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CIVIL ACTION NO. _3:21cv00742_____ |
| RMBS ENTERPRISES LLC; | ) | |
| | ) | COMPLAINT |
| Serve: | ) | |
| Alexander Boyd, Registered Agent | ) | JURY TRIAL DEMAND |
| 2100 E Cary Street | ) | |
| Hirschler Fleischer | ) | |
| Richmond, VA 23223-7270 | ) | |
| | ) | |
| MIKE BULEZA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>COMPLAINT</u>

Plaintiff Maverick Pettit, by counsel, and for his Complaint against Defendant RMBS Enterprises LLC states as follows:

1.      This action brings federal claims of discrimination and retaliation based on sex under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Virginia Human Rights Act ("VHRA"). Plaintiff brings these claims because Defendant discriminated against him due to his being a transgender man and retaliated against him for engaging in protected activity in violation of Title VII, Virginia Fraud and Abuse Whistleblower Protection Act, and the common law of wrongful termination. Plaintiff was ultimately terminated from his employment as a result of Defendants' actions.

## JURISDICTION AND VENUE

2.      This Court has federal question jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, because this is a civil action arising under a federal statute.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events described in this action took place within this judicial district.

## PARTIES AND RELEVANT NON-PARTIES

4.      Plaintiff Maverick Pettit ("Plaintiff" or "Mr. Pettit") is a resident and citizen of Richmond, Virginia.

5.      Mr. Pettit is a transgender man.

6.      Mr. Brown is a member of a protected class based on his gender identity.

7.      Defendant RMBS Enterprises LLC ("RMBS") is a Virginia corporation with its principal office in Chesterfield, Virginia.

8.      RMBS operates a commercial cleaning business.

9.      Defendant Mike Buleza ("M. Buleza") was, at all relevant times, a co-owner of RMBS and Mr. Pettit's supervisor.

## FACTS

10.      Mr. Pettit first became employed with RMBS in early 2019 as a part-time employee.

11.     Mr. Pettit worked on and off for RMBS from 2019 to 2021 in three distinct periods: one in early 2019, one in early 2020, and the last from approximately November 2020 to February 12, 2021.

12.     In early 2019, Mr. Pettit presented as a woman. When he returned to RMBS in early 2020 for his second period of employment, he had legally changed his name and presented as a man.

13.     From November 2020 to February 2021, Mr. Pettit largely worked for RMBS without incident.

14.     Mr. Pettit was a model employee who went above and beyond for his work, routinely working on short notice and for long hours. He also performed additional tasks including picking up supplies and other crew members.

15.     Mr. Pettit had a history of depression, but it was mostly managed. In the beginning of February 2021, he was having difficulty sleeping and was very anxious.

16.     He felt like he was spiraling and having a mental health crisis—he went to his doctor on February 11, 2021 for treatment.

17.     His doctor prescribed him on Seroquel, an anti-psychotic medication used to treat serious depression.

18.     When he first started the prescription, the doctor warned Mr. Pettit that side effects could include dizziness and lightheadedness and, due to those side effects, he should not drive or operate heavy machinery until his body had adjusted to the medicine.

19.     Mr. Pettit was supposed to take his first dose on the evening of February 11, 2021.

20.     That same day, M. Buleza informed Mr. Pettit that he had to report to work that evening for an overnight assignment.

3

21.     Mr. Pettit called M. Buleza to tell him he would not be able to come to work that evening and that he was having a mental health crisis. Mr. Pettit informed M. Buleza that he would update him the next day with his availability.

22.     M. Buleza threatened Mr. Pettit's job and said if he did not show up, he would be fired.

23.     Mr. Pettit did not go to work on the evening of February 11, 2021.

24.     The next day, Shawn Spencer ("Spencer"), Mr. Pettit's coworker, informed Mr. Pettit that M. Buleza valued him as a member of the team and wanted him to continue working at RMBS.

25.     M. Buleza then called Mr. Pettit directly and told him to show up for work that night. Noticing that M. Buleza was calmer, Mr. Pettit explained to him his history of depression and struggles with his mental health.

26.     When Mr. Pettit arrived at the job site that night, he learned M. Buleza had made derogatory comments about his gender to Spencer.

27.     Specifically, M. Buleza said, "Don't worry about Maverick. He has serious mental health issues. **He is still a she and things go deep there** so this is a situation like we ran into before with Tessa [sic] son. Maverick is a great worker yes but good [sic] help him bro" (emphasis added).



4

28.     Mr. Pettit immediately confronted M. Buleza and said "I'm still a she, huh?" and reminded him "[d]iscrimination is illegal in case you didn't know."

29.     M. Buleza responded that he was going to "squash [Mr. Pettit] like the little bug" he was.

30.     M. Buleza then terminated Mr. Pettit's employment.


**Exhaustion of Administrative Remedies**

31.     On July 26, 2021, Mr. Pettit timely filed a charge of discrimination against Defendant based on sex discrimination and retaliation with the United States Equal Opportunity Commission ("EEOC").

32.     The EEOC issued Mr. Pettit a Notice of Right to Sue in this matter against Defendant on August 27, 2021.

33.     Plaintiff has exhausted his administrative remedies as required by 42 U.S.C. § 2000e, *et seq*.


**COUNT I**
**SEX DISCRIMINATION IN VIOLATION OF THE TITLE VII**
**AGAINST DEFENDANT RMBS**

34.     The allegations in the foregoing paragraphs are incorporated as if realleged herein.

35.     Mr. Pettit is a member of a protected class based on his status as a transgender man.

36.     Defendant was aware Mr. Pettit was a transgender man because Mr. Pettit transitioned during the course of his employment with Defendant.

37.     Defendant, through M. Buleza, claimed Mr. Pettit's mental health issues were the result of him being transgender.

38.     Defendant, through M. Buleza, deliberately misgendered Mr. Pettit.

39.     Defendant admitted Mr. Pettit was a great worker.

40.     Defendant terminated Mr. Pettit's employment because he was transgender.

41.     As a direct and proximate result of the acts and conduct of Defendant as alleged herein, Plaintiff has suffered loss of earnings and related employment benefits in an amount to be proven at trial.

42.     As a direct and proximate result of Defendant's actions, Mr. Pettit has suffered and continues to suffer severe emotional distress. Such injury includes pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, anxiety, distress, depression, anxiety, fearfulness, difficulty sleeping, loss of enjoyment of life, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, other past pecuniary losses, future pecuniary losses, litigation expenses including attorneys' fees, and other non-pecuniary losses.

**COUNT II**
**SEX AND GENDER IDENTITY DISCRIMINATION IN VIOLATION OF THE VHRA AGAINST DEFENDANT RMBS**

43.     The allegations in the foregoing paragraphs are incorporated as if realleged herein.

44.     Mr. Pettit is a member of a protected class based on his gender identity as a transgender man.

45.     Discrimination on the basis of gender identity is, by its nature, also on the basis of sex.

46.     Defendant was aware Mr. Pettit was a transgender man because Mr. Pettit transitioned his public self from presenting as a woman to presenting as a man during the course of his employment with Defendant.

47.     Defendant, through M. Buleza, claimed Mr. Pettit's mental health issues were the result of him being transgender.

48.     Defendant, through M. Buleza, deliberately misgendered Mr. Pettit, referring to him as "she."

49.     Defendant terminated Mr. Pettit's employment because he was transgender.

50.     Defendant lacked a legitimate, non-discriminatory reason for Mr. Pettit's termination, and even admitted that Mr. Pettit was a "great worker."

51.     The Virginia Human Rights Act prohibits discrimination and discharge against an individual on the basis of that individual's gender identity.

52.     Defendant, through M. Buleza, discriminated against and discharged Mr. Pettit because Mr. Pettit is a transgender man.

53.     As a direct and proximate result of the acts and conduct of Defendant as alleged herein, Plaintiff has suffered loss of earnings and related employment benefits in an amount to be proven at trial.

54.     As a direct and proximate result of Defendant's actions, Mr. Pettit has suffered and continues to suffer severe emotional distress. Such injury includes pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, anxiety, distress, depression, anxiety, fearfulness, difficulty sleeping, loss of enjoyment of life, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, other past

pecuniary losses, future pecuniary losses, litigation expenses including attorneys' fees, and other non-pecuniary losses.

**COUNT III**
**RETALIATION UNDER TITLE VII**
**AGAINST DEFENDANT RMBS**

55.     The allegations in the foregoing paragraphs are incorporated as if realleged herein.

56.     Title VII prohibits retaliation against an employee who, in good faith, opposes sex discrimination.

57.     Mr. Pettit engaged in protected activity when he complained to M. Buleza about Mr. Buleza misgendering him.

58.     Mr. Pettit told him discrimination was illegal.

59.     M. Buleza then terminated his employment.

60.     Defendant's conduct was actuated by malice, spite, and ill will; was willful and wanton, and evinced conscious disregard for the rights of Mr. Pettit.

61.     As a direct and proximate result of Defendant's actions, Mr. Pettit has suffered and continues to suffer severe emotional distress. Such injury includes pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, anxiety, distress, depression, anxiety, fearfulness, difficulty sleeping, loss of enjoyment of life, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, other past pecuniary losses, future pecuniary losses, litigation expenses including attorneys' fees, and other non-pecuniary losses.

## COUNT IV
## RETRALIATION UNDER THE VIRGINIA FRAUD AND ABUSE WHISTLEBLOWER PROTECTION ACT
## AGAINST DEFENDANT RMBS

62.     The allegations in the foregoing paragraphs are incorporated as if realleged herein.

63.     The Virginia Fraud and Abuse Whistleblower Protection Act prohibits retaliation against an employee who, in good faith, reports a violation of a state or federal law.

64.     Mr. Pettit reported such a violation when he complained to M. Buleza about Mr. Buleza misgendering him and told him discrimination was illegal.

65.     M. Buleza then terminated his employment.

66.     As a direct and proximate result of Defendant's actions, Mr. Pettit has economic damages and litigation expenses including attorneys' fees and costs.

## COUNT V
## WRONGFUL TERMINATION IN VIOLATION OF VIRGINIA COMMON LAW
## AGAINST BOTH DEFENDANTS

67.     The allegations in the foregoing paragraphs are incorporated as if realleged herein.

68.     At all times relevant to this Complaint, M. Buleza was acting on behalf of Defendant RMBS.

69.     Defendants, through M. Buleza, claimed Mr. Pettit's mental health issues were the result of him being transgender.

70.     Defendants, through M. Buleza, deliberately misgendered Mr. Pettit, referring to him as "she."

9

71.     Defendants terminated Mr. Pettit's employment because he was transgender and because he confronted M. Buleza about his discrimination, which is both illegal and directly contrary to the public policy of the Commonwealth of Virginia, as articulated in the Virginia Human Rights Act.

72.     The Virginia Human Rights Act prohibits discrimination and discharge against an individual on the basis of that individual's gender identity.

73.     Defendants' termination of Mr. Pettit violates the stated public policy of the Commonwealth of Virginia.

74.     As a direct and proximate result of Defendants' actions, Mr. Pettit has suffered and continues to suffer severe emotional distress. Such injury includes pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, anxiety, distress, depression, anxiety, fearfulness, difficulty sleeping, loss of enjoyment of life, past and future loss of income and benefits of employment, lost career and business opportunities and advancement, other past pecuniary losses, future pecuniary losses, litigation expenses including attorneys' fees, and other non-pecuniary losses.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Pettit requests this Court enter judgment in his favor against Defendants and further:

(a) Award Mr. Pettit compensatory damages, plus past and future pecuniary damages on each of the above-stated Counts in an amount that can only be determined in discovery; and in addition

10

(b)  Award Mr. Pettit attorneys' fees, expert fees, and costs of this action as may be

permitted by law; and in addition

(c)  Award Mr. Pettit such other and further relief as may be appropriate.

## JURY DEMAND

**PLAINTIFF MAVERICK PETTIT DEMANDS A TRIAL BY JURY.**

Dated:          November 25, 2021                    Respectfully,

                                                                    _____/s/_____
                                                                    Joshua Erlich, VA Bar No. 81298
                                                                    Davia Craumer, VA Bar No. 87426
                                                                    Katherine L. Herrmann, VA Bar No. 83203
                                                                    THE ERLICH LAW OFFICE, PLLC
                                                                    2111 Wilson Blvd., Ste. 700
                                                                    Arlington, VA  22201
                                                                    Tel:    (703) 791-9087
                                                                    Fax:    (703) 722-8114
                                                                    Email:  jerlich@erlichlawoffice.com
                                                                            dcraumer@erlichlawoffice.com
                                                                            kherrmann@erlichlawoffice.com